489 S.E.2d 768

**Evelyn ROLLINS, Petitioner Below, Appellant,**

v.

**MASON COUNTY BOARD OF EDUCATION, Respondent Below, Appellee.**

**No. 23549.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 1997.

Decided July 3, 1997.

---

John Everett Roush Legal Services, West Virginia School Service Personnel Association, Charleston, for Appellant.

James W. Gabehart Campbell, Woods, Bagley, Emerson, McNeer and Herndon, Charleston, for Appellee.

WORKMAN, Chief Justice.

Appellant Evelyn Rollins appeals from the November 7, 1995, order of the Circuit Court of Mason County denying her petition for a writ of mandamus through which she sought to compel the Appellee Mason County Board of Education ("Board") to reinstate her health insurance benefits. The specific issue presented is whether West Virginia Code § 23–5A–2 (1994) prohibits an employer from terminating an employee's health insurance benefits when that employee is no longer receiving temporary total disability ("TTD") benefits, but is protesting the Workers' Compensation Commissioner's ("Commissioner") denial of her request to reopen a previously-ruled upon claim. After examining the statutory language in conjunction with the workers' compensation statutes, as a whole, we determine that the circuit court correctly denied the writ of mandamus sought by Appellant and accordingly, affirm the lower's court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is employed as a bus driver for the Board. Upon exiting a school bus on March 4, 1993, she slipped on bus steps that were wet due to rainy weather conditions and injured her lower back as a result. She filed a workers' compensation claim the next day in connection with her injury. Her claim was ruled compensable by the Commissioner and she received TTD benefits from March 8, 1993, through February 17, 1994, for her back injury.

Dr. Loimil examined Appellant at the request of the Commissioner on January 8, 1994, and determined that she had reached her maximum degree of medical improvement with regard to the back injury. Dr. Loimil concluded that Appellant was no longer disabled and recommended that she receive an award of 6 % permanent partial disability ("PPD"). The Commissioner then informed Appellant by notice dated February 17, 1994, that her claim would be closed for further TTD benefits, based on Dr. Loimil's report, unless she submitted evidence in justification of additional benefits within thirty days. Appellant submitted a report of Dr. Szendi–Harvath along with a CT scan in an attempt to obtain continued TTD benefits. After determining that Dr. Szendi–Horvath's report did not present any new evidence that had not previously been considered, the Commissioner closed Appellant's claim for TTD benefits, by order dated March 30, 1994. Appellant protested the closing of her claim for TTD benefits within the statutorily-required thirty-day period.[1]

By order dated April 5, 1994, Appellant was awarded 6% PPD, which she timely pro-

---

1. *See* W.Va.Code § 23–5–1(b) (Supp.1996).

tested. Appellant sought to reopen her claim for additional TTD and/or permanent total disability benefits ("PTD") and the Commissioner denied her request, by order dated May 19, 1994. She timely protested the denial. When the Commissioner sought to submit Appellant's protests for decision, she sought additional time to submit further medical evidence. Appellant submitted the report of Dr. Ignatiadis on August 5, 1994, wherein he indicated that Appellant should have a lumbar MRI. The Commissioner denied Appellant's request for the MRI by letter dated September 21, 1994, and Appellant protested the denial.[2]

On October 12, 1994, the Board notified Appellant that it had paid her health insurance premiums for one year consistent with its obligations to an employee on an approved medical leave of absence, but that it would cease paying her health premiums as of November 11, 1994. *See* W. Va.Code § 5–16–24 (1994).[3] She was informed by the Board that she would be responsible for paying her premiums if she desired to keep the medical coverage provided through PEIA. As of November 1, 1994, the Board ceased paying Appellant's health insurance premiums.

Seeking to compel the Board to reinstate her medical insurance, Appellant filed a petition requesting a writ of mandamus with the circuit court on April 11, 1995. By order dated November 7, 1995, the circuit court denied Appellant's petition for a writ of mandamus. That denial is the subject of this appeal.

## II. DISCUSSION

At the center of this appeal is the statutory language of West Virginia Code § 23–5A–2, which provides:

Any employer who has provided any type of medical insurance for an employee or his dependents by paying premiums, in whole or in part, on an individual or group policy shall not cancel, decrease his participation on behalf of the employee or his dependents, or cause coverage provided to be decreased during the entire period for which that employee during the continuance of the employer-employee relationship *is claiming or is receiving benefits under this chapter for a temporary disability.* If the medical insurance policy requires a contribution by the employee, that employee must continue to make the contribution required, to the extent the insurance contract does not provide for a waiver of the premium.

Nothing in this section shall prevent an employer from changing insurance carriers or cancelling or reducing medical coverage if the temporarily disabled employee and his dependents are treated with respect to insurance in the same manner as other similarly classified employees and their dependents who are also covered by the medical insurance policy.

This section provides a private remedy for the employee which shall be enforceable in an action by the employee in a circuit court having jurisdiction over the employer.

W. Va.Code § 23–5A–2 (emphasis supplied).

Appellant argues that she qualifies as an employee who "is claiming" workers' compensation benefits by virtue of her protesting the Commissioner's decisions to close her claim for TTD benefits and not to reopen her claim for additional TTD benefits. *Id.* The parties concur that Appellant was not receiving TTD benefits at the time the Board determined that it was no longer going to extend health insurance coverage to her. Thus, only if Appellant can qualify as "claiming" TTD benefits does she come within the purview of West Virginia Code § 23–5A–2.

---

**2.** Based on Appellee's representations during oral argument, the MRI was later authorized by the office of judges.

**3.** The pertinent provisions of West Virginia Code § 5–16–24 provide that:

Any employee who is on a medical leave of absence, approved by his or her employer, shall, subject to the following provisions of this paragraph, be entitled to continue his or her coverage until he or she returns to his or her employment, and such employee and employer shall continue to pay their proportionate share of premium costs as provided by this article: *Provided, That the employer shall be obligated to pay its proportionate share of the premium cost only for a period of one year* . . . .

W. Va.Code § 5–16–24 (emphasis supplied).

Appellant concedes that the term "claiming" is not defined within Chapter 23 of the West Virginia Code. She suggests that she is "claiming" benefits within the meaning of West Virginia Code § 23–5A–2 because, throughout the workers' compensation statutes, an individual who files a claim is referred to as a "claimant." Appellant maintains, in conclusory fashion, that her attempts to reopen her TTD claim and her protest of the Commissioner's denial of the requested reopening necessarily bring her within the statutory meaning of "claiming" benefits intended by West Virginia Code § 23–5A–2. Choosing to ignore the statutory issue presented, the Board argues instead that Appellant was no longer subject to the protections of West Virginia Code § 23–5A–2 once she filed a claim seeking PTD benefits.[4]

■ As with all issues of statutory interpretation, this Court's duty is to "ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, in part, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Article 5A of Chapter 23 was enacted in 1978 for the express purpose of prohibiting employers from certain discriminatory practices with the core objective of protecting employees from retaliatory conduct in response to the filing of workers' compensation claims. Applying this statutory principle, we ruled in syllabus point two of *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980), that "[i]t is a contravention of public policy and actionable to discharge an employee because he has filed a workmen's compensation claim against his employer."

Article 5A begins with a broadly-stated proscription against discriminatory conduct undertaken by employers in response to an employee's "receipt of or attempt to receive [workers' compensation] benefits." W. Va.

Code § 23–5A–1. The Legislature later amended article 5A to insert specific types of proscribed discriminatory conduct. Section two, enacted in 1980, sets forth under what circumstances employers are constrained from terminating the health insurance benefits of their employees, and section three, enacted in 1990, provides that employers generally cannot terminate employees who are determined to have a compensable injury.[5] *See* W. Va.Code §§ 23–5A–2, –3.

■ In *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991), this Court set forth in syllabus point one the required elements for establishing a violation of the generalized prohibition against discrimination found in section one of chapter 23:

In order to make a prima facie case of discrimination under W. Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W. Va.Code, 23–1–1, *et seq.;* and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge *or otherwise discriminate* against the employee.

184 W.Va. at 701, 403 S.E.2d at 718 (emphasis supplied). While *Powell* involved the issue of whether sufficient evidence had been introduced to support the jury's finding of retaliatory discharge, various factors identified in that case are nonetheless applicable in cases, such as this one, in which the alleged discrimination does not rise to the level of discharge. *Id.* One such relevant factor is the proximity of the discharge to the filing of the workers' compensation claim. *Id.* at 704–06, 403 S.E.2d at 721–23. Whether "the employer has a neutral absenteeism policy that permits discharge of an employee who is

---

4. The Board's argument is essentially that the provisions of West Virginia Code § 23–5A–2 only apply to claimants who are claiming or receiving TTD benefits. Thus, the Board contends that once Appellant was claiming PTD benefits and protesting the denial of such benefits, she was outside the purview of West Virginia Code § 23–5A–2. Finding no merit to this contention, we do not address it further.

5. Employers are permitted to terminate employees that have compensable injuries if "the injured employee has committed a separate dischargeable offense." W. Va.Code § 23–5A–3(a). Section three also delineates the manner in which an employer is required to deal with the reemployment of injured employees. *See* W. Va. Code § 23–5A–3(b).

absent for a specific period of time" is yet another factor to be examined. 184 W.Va. at 705, 403 S.E.2d at 722. Where such a neutral policy exists, "courts have generally held that termination of employment under such a policy does not violate a compensation anti-discrimination statute." *Id.*

Neither *Powell,* which was decided only under West Virginia Code § 23–5A–1, nor West Virginia Code § 23–5A–3, which specifically addresses the termination of injured employees, completely prohibit employers from taking action with regard to injured workers, including discharge, in certain situations. As this Court recognized in *Powell,* "[i]f an employee is disabled on the job and is no longer qualified to perform the duties of his or her job, an employer may terminate that employee when it becomes obvious that the period of disability is not determinable." 184 W.Va. at 706, 403 S.E.2d at 723 (quoting *Kern v. South Baltimore Gen. Hosp.,* 66 Md.App. 441, 504 A.2d 1154, 1159 (1986)). Subsection three only prohibits the termination of an injured employee "while the injured employee is off work due to a compensable injury ... and is receiving or is eligible to receive temporary total disability benefits." W. Va.Code § 23–5A–3(a).

■■■ Against this overview of Chapter 23 and prohibited acts of discrimination, we turn to the statutory issue presented by this case. Specifically, did the Legislature through the use of the term "claiming" in West Virginia Code § 23–5A–2 intend to entitle individuals, such as Appellant, to employer-paid health insurance coverage throughout the duration of the protest/appeal stage of the claims process. Because we do not find the statute at issue to be clear on its face, we are required to apply well-established canons of statutory construction. It is axiomatic that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith,* 159 W.Va. at 109, 219 S.E.2d at 362. This interpretational rule which re-

quires us to read statutes that deal with the same subject matter in *pari materia* permits us to look to other workers' compensation statutes. The specific statutes that warrant consultation are those that deal with the procedural aspects of filing and protesting claims.

West Virginia Code § 23–5–1 (Supp.1996) provides the mechanism for both claimants and employers to object to decisions relating to workers' compensation claims. Subsection (b) of that section provides, in pertinent part:

> Except with regard to interlocutory matters, upon making any decision, upon the making or refusing to make any award, or upon the making of any modification or change with respect to former findings or orders, ... the division shall give notice, in writing, to the employer, employee, claimant, as the case may be, of its action, which notice shall state the time allowed for filing an objection to such finding, and such action of the division shall be final unless the employer, employee, claimant or dependant shall, within thirty days after the receipt of such notice, object in writing, to such finding....

W. Va.Code § 23–5–1(b). In subsections (c) and (d), the terms "object" and "protest" are used interchangeably.[6] The Workers' Compensation Act (the "Act"), West Virginia Code §§ 23–1–1 to 23–6–1 (1994 & Supp. 1996), fully addresses the related review concepts of objections, protests, and appeals. *See* W. Va.Code §§ 23–5–1 to –5–15. We find it significant that the Legislature failed to include in West Virginia Code § 23–5A–2 any language referencing the objection, protest, or appellate stage of a TTD claim. Had the Legislature intended to extend the protection of health insurance coverage through this procedural stage of a claim, logic suggests that such language would have followed the "is receiving benefits" phrase of West Virginia Code § 23–5A–2. We base this conclusion on the fact that a claim for benefits necessarily precedes the receipt of such benefits, and the protest or appellate stage of a

---

**6.** To illustrate this interchangeability, subsection (d) provides that "[u]pon entering into mediation, the parties shall stay further action on the *objection.*" Then later in that same subsection,

the term "protest" is used in place of objection when the statute provides that "and the office of judges shall lift the stay on the original *protest.*" W. Va.Code § 23–5–1(d) (emphasis supplied).

claim is naturally subsequent to the receipt or denial of such benefits.

■ Further examination of the Act demonstrates that the absence of language expressly requiring employer-paid health benefits throughout the protest or appellate stage of a workers' compensation claim comports with both the statutory scheme of benefit payments and the objectives of prohibiting retaliatory conduct. Under our statutory system, TTD benefits are to be terminated when one of three conditions is met. Pursuant to West Virginia Code § 23–4–7a(e) (Supp.1996),

> the division shall enter a notice suspending the payment of temporary disability benefits but providing a reasonable period of time during which the claimant may submit evidence justifying the continued payment of temporary total disability benefits when:
>
> (1) The physician or physicians selected by the division conclude that the claimant has reached his or her maximum degree of improvement; or
>
> (2) When the authorized treating physician shall advise the division that the claimant has reached his or her maximum degree of improvement or that he or she is ready for disability evaluation. . . .
>
> (3) When other evidence submitted to the division justifies a finding that the claimant has reached his or her maximum degree or improvement: *Provided, That in all cases a finding by the division that the claimant has reached his or her maximum degree of improvement shall terminate the claimant's entitlement to temporary total disability benefits regardless of whether the claimant has been released to return to work* . . . .

W. Va.Code § 23–4–7a(e)(1)–(3) (emphasis supplied). In syllabus point one of *Mitchell v. State Workmen's Compensation Commissioner*, 163 W.Va. 107, 256 S.E.2d 1 (1979), we stated this rule as follows:

> Under the Workmen's Compensation Act, W. Va.Code, 23–1–1, *et seq.*, temporary total disability benefits should be terminated where the Commissioner finds that a claimant either has reached his maximum degree of medical improvement from the industrial accident, or has been medically certified to return to work.

163 W.Va. at 107, 256 S.E.2d at 4.

In this case, Appellant was determined to have reached her maximum degree of medical improvement by the Commissioner's doctor in his report dated January 8, 1994, and her claim was closed for purposes of further TTD benefits as a result of this determination effective March 30, 1994. Although Appellant, or any other claimant, has the right to protest the closure of her claim for TTD benefits,[7] the claimant is not entitled to further benefits absent a favorable ruling with regard to her protest/appeal. Thus, were we to interpret the "is claiming" language of West Virginia Code § 23–5A–2 as encompassing the seemingly indefinite length of the appellate stage of the workers' compensation claim, we would be requiring employers to pay for the health insurance premiums of employees who are statutorily no longer entitled to receive TTD benefits. While it makes sense that the Legislature intended to extend health insurance coverage to employees during that time period between an injury and the receipt of benefits, there is no corresponding basis for suggesting that health benefits are to continue throughout the entire duration of all the claimant's protests and appeals.[8] We similarly do not find such a result mandated by the purpose of the anti-retaliatory statute at issue.

As previously discussed, this Court in *Powell* identified various factors for consideration in connection with a claim of employer retaliation. Two of those factors that have specific application to this case are the proximity of the alleged retaliation to the filing of the workers' compensation claim and the existence of a neutral policy with respect to the

---

7. *See* W. Va.Code § 23–5–1.

8. Appellant suggests that requiring continued employer-paid health insurance benefits throughout the appeals process is consistent with the chief purpose of the Act—to protect the financial

well-being of injured workers and their dependents. Appellant overlooks an equally important objective of the Act—"to effectuate his or her [an injured claimant's] return to work at the earliest possible time." W. Va.Code § 23–4–7(a).

cessation of health benefits. In the instant case, the alleged discriminatory conduct occurred almost eighteen months after Appellant filed her workers' compensation claim. While this temporal factor is not in itself conclusive of the absence of discriminatory intent on the part of the Board, further evidence that the Board was not acting in retaliation to Appellant's filing of a claim for benefits is found in the fact that the Board was merely adhering to the statutory requirements of West Virginia Code § 5–16–24. That particular statute, which is found in the West Virginia Public Employees Insurance Act, West Virginia Code §§ 5–16–1 to –27 (1994 & Supp.1996), only requires an employer to pay its proportionate share of an employee's health care premium who is on a medical leave of absence for a period of one year.[9] Thus, because the Board had not arbitrarily picked a one-year period for benefit payments, but was instead complying with the statutory requirements governing public employees' insurance, this certainly suggests adherence to a neutral, non-discriminatory policy.

 The Board argues that, after the one-year payment period imposed by West Virginia Code § 5–16–24 has expired, it is no longer subject to the statutory language of West Virginia Code § 23–5A–2. Given the location of these two statutes within completely distinct areas of the Code, we are not persuaded by this argument. Accordingly, we determine that the one-year limitation imposed by West Virginia Code § 5–16–25 on an employer to pay its proportionate share of the health insurance premiums for those employees on approved medical leaves of absence is not controlling with respect to whether an employer can terminate its payment of an employee's health insurance premiums without being in violation of West Virginia Code § 23–5A–2.

For the reasons previously set forth, we conclude that the absence of language within West Virginia Code § 23–5A–2 that specifically includes the protest/appeals stage of a workers' compensation claim was intentional.

A workers' compensation claimant who is protesting the closure of her claim for temporary total disability benefits and/or the denial of additional temporary total disability benefits does not come within the meaning of the terms "is claiming" found in West Virginia Code § 23–5A–2 (1994). Accordingly, an employer who ceases to pay the health insurance premiums for a claimant who is protesting or appealing the closure or denial of TTD benefits does not commit an act of discrimination within the legislative intent of West Virginia Code § 23–5A–2.

Based on the foregoing, we affirm the decision of the Circuit Court of Mason County.

Affirmed.

---

9. An employer can certainly choose to pay for an employee's health care coverage for longer than one year. The facts of this case indicate that the employer did just that as Appellant's health care premiums were paid by the Board for almost eighteen months following her injury.