518 S.E.2d 650

**Marlene WRISTON, Plaintiff below, Appellant,**

v.

**RALEIGH COUNTY EMERGENCY SERVICES AUTHORITY, a municipal corporation, and Jack D. Bowden, Jr., Individually, Defendants below, Appellees.**

**No. 25835.**

Supreme Court of Appeals of West Virginia.

Submitted June 8, 1999.

Decided July 9, 1999.

Richard D. Owen, Esq., J. David Fenwick, Esq., Goodwin & Goodwin, LLP, Charleston, West Virginia, Attorneys for the Appellant.

J. Victor Flanagan, Esq., David A. Kirkpatrick, Esq., Pullin, Knopf, Fowler & Flanagan, Beckley, West Virginia, Attorneys for the Appellees.

STARCHER, Chief Justice:

In this appeal from the Circuit Court of Raleigh County, we are asked to determine whether an employer, through the actions of a supervisor, may demand that an employee reimburse the employer for medical insurance premiums paid while the employee was on an unpaid leave of absence due to a work-related injury, and after the employee had filed a claim for workers' compensation benefits.

The circuit court, in orders dated June 17, 1998 and July 2, 1998, granted summary judgment to the employer and the employee's supervisor. The circuit court determined that because the employer continued to pay the employee's medical insurance premiums while the employee was seeking workers' compensation benefits, and because the employer did not actually seek reimbursement of those premiums after the employee resigned, no discrimination had occurred in violation of our workers' compensation anti-discrimination statutes, *W.Va.Code*, 23–5A–1 [1978] and –2 [1982]. The circuit court also concluded that the employee was not constructively discharged as a result of the employer's demands. Lastly, because the employer was a political subdivision of the State, the circuit court concluded that the employee's supervisor was a public employee entitled to immunity under *W.Va.Code*, 29–12A–5 [1986].

As set forth below, we reverse the circuit court's orders in part, and conclude that questions of material fact exist concerning whether the employee was discriminated against in violation of our workers' compensation anti-discrimination statutes, and concerning whether the employee was constructively discharged. We affirm the circuit court's finding that the employee's supervisor was immune as a public employee.

## I.

### Facts and Background

The appellant, Marlene Wriston, was employed as a telecommunicator for the appellee, the Raleigh County Emergency Service Agency ("RCESA"), a political subdivision. She was employed by RCESA from September 1990 through June 17, 1996.

The appellant's job at RCESA involved the use of her hands, including operating dispatch radios, answering incoming phone calls, completing service cards, maintaining written logs, operating a teletype, as well as performing typewritten and computer keyboard work. Many of the tasks performed by the appellant involved repetitive actions.

On March 15, 1996, the appellant left work and went to a local hospital emergency room with severe pain in her hands, where she was diagnosed with carpal tunnel syndrome. The appellant was instructed to stop working until she talked with a specialist, and told not to

return to work for an undetermined period of time.

On March 19, 1996, the plaintiff depleted her accrued sick leave, and the next day informed her supervisor, appellee Jack D. Bowden, Jr. ("Bowden"), that she intended to file a workers' compensation claim. At the direction of appellee Bowden, the appellant signed a written request for an unpaid leave of absence until April 9, 1996. The written request specifically states, "[w]orkers' compensation is pending."

In a response letter to the appellant, Mr. Bowden granted the appellant her requested leave. However, Mr. Bowden told the appellant that because she was taking an unpaid leave of absence, she was not entitled to any employee benefits. He indicated that the appellant would have to pay her own medical insurance premiums until she was approved for workers' compensation benefits.[1]

Upon receiving this letter from Mr. Bowden, the appellant contacted a representative of the medical insurance coordinator for RCESA, the Public Employee's Insurance Agency ("PEIA"). The representative told the appellant and Mr. Bowden that RCESA should continue to pay the appellant's medical insurance premiums while her workers' compensation claim was pending. Additionally, the representative faxed Mr. Bowden a 1990 legal opinion letter from the West Virginia Attorney General to the PEIA addressing this issue. That legal opinion concluded that, under the West Virginia Workers' Compensation Act, *W. Va. Code*, 23–5A–2:

> [A]s long as the employer-employee relationship exists and that employee is either on or claims to be entitled to be on work-

ers' compensation, the employer is obligated to continue to pay its proportionate share of medical insurance coverage.

Upon receiving this opinion letter from PEIA, Mr. Bowden wrote a letter to the appellant. In the letter, Mr. Bowden conceded that RCESA would have to continue paying the appellant's medical insurance premiums—but, he added that if the appellant's workers' compensation claim was subsequently denied, she would have to reimburse RCESA for all insurance premiums.[2]

On March 27, 1996, the appellant brought her workers' compensation claim form into RCESA offices to be completed. The workers' compensation claim form consisted of three parts: The first section, completed by the appellant, indicated that she had "numbness and pain [in] both wrists" which was caused by "writing logs, typing, and teletype and computer work—repetitive use [of] hands and wrists." The second section, completed by her doctor, diagnosed the appellant with "bilateral carpal tunnel" syndrome caused by the "repetitive use of both hands."

Appellee Bowden completed the third, employer's section of the claim form. In answering the questions on the form, it appears that Mr. Bowden told the Workers' Compensation Division that he did not believe that the appellant's hand injury was related to work, thereby challenging the appellant's right to workers' compensation benefits. Mr. Bowden indicated that he disagreed with the information supplied by the plaintiff, stating that "no accident occurred to our knowledge." He also indicated that he had reason to question the appellant's injury, stating "[r]epetitive use of hands/wrists in this job is

---

1. Mr. Bowden's letter to the appellant stated:
   3. If you wish to continue your insurance coverage, it will be necessary for you to pay your monthly premium of $391 per month for family coverage, beginning April 1, 1996.
   4. If you are approved for workers' compensation, according to the PEIA [Public Employee's Insurance Agency] guidelines, you would be eligible for insurance benefits from your employer.

2. Mr. Bowden's second letter to the appellant stated:
   [T]o make absolutely sure that this agency is in complete compliance with the law, we will

make payment for your PEIA insurance effective April 1, 1996, even though you are receiving no wages from this agency and have no sick leave benefits.
   However, if your workers' compensation claim is denied, it is your responsibility to reimburse the costs of your insurance premiums to this agency. In the event this does occur, the total cost of $391 per month for each month of premiums paid will be deducted from your accrued compensatory time/vacation leave and/or future wages you receive from this agency.

less than 20% of job" and that "[o]ther use—thru self-employment" was apparently the cause of the appellant's problems.

On several occasions in early April 1996, the appellant sought to return to work in some capacity for RCESA. The appellant's physician indicated that he would allow her to return to work if RCESA could come up with "light duty" work for the appellant to perform. In December 1995, appellee Bowden had assigned the appellant to "light duty" on a temporary basis when the appellant was suffering from a non-occupational medical problem. Further, Mr. Bowden had stated on the appellant's workers' compensation claim form that the repetitive use of the appellant's hands was "less than 20% of [her] job." Nevertheless, RCESA was unable to find any "light duty" work for the appellant to perform.

Prior to the appellant's March 1996 injury, she had served as RCESA's representative to the Local Emergency Planning Commission ("LEPC"), and was the chairperson of the LEPC. After the appellant's injury and the filing of her workers' compensation claim, the appellant testified in her deposition that she volunteered to attend the LEPC meetings without pay, but was told she was not allowed to attend.[3]

On June 13, 1996, the Workers' Compensation Division issued an order denying the compensability of the appellant's claim. Upon learning of this denial, the appellant attempted to contact Mr. Bowden to learn the status of her medical insurance, but learned he was on vacation. Mr. Bowden's administrative assistant, Matilda Webb, advised the appellant that she would have to reimburse RCESA for all past medical insurance premiums for March to June, and begin paying all current and future medical insurance premiums. The appellant then spoke with the assistant director of RCESA, Margaret Agee, and she was again told that RCESA would not pay her insurance premiums.

RCESA had been paying $391.00 per month in premiums for the appellant's medical insurance coverage. The appellant alleges that the only source of money available to pay the insurance premiums was from her accrued retirement funds. The appellant could not use or borrow the retirement funds while she was an employee of RCESA; the only way to gain access to her retirement account was to resign.[4]

Accordingly, on June 17, 1996, the appellant resigned from her employment with RCESA.

3. The appellant offered the following testimony in her deposition:

When I requested the ability to go to the LEPC meeting, Mr. Morgan told me that I was there as a representative of [RCESA]. If I could not work for [RCESA], I could not work for LEPC, because they just couldn't cover me being there.

I told him I didn't have to be paid for being there, but I would like to attend. He told me they could not allow me to work. I went to Ms. Agee; she agreed with Mr. Morgan's opinion. And then I went to Mr. Bowden, and he also agreed. And from that time further, I was not allowed to attend the LEPC meetings.

Q. Not even in a volunteer status?

A. I could not go there as a representative of [RCESA] at all.

. . .

Q. . . . What made you feel that you could still perform your duties with the LEPC and not with the Raleigh County Emergency Service Authority because of your carpal tunnel injury?

A. I conducted the meetings. I did not have to use my hands to conduct the meetings, only my brain, and that wasn't impaired. I had approached them about coming back to work. I could have worked if they would have allowed me to work without using my hands so extensively.

4. The appellant related the following conversation in her deposition:

. . . I asked her [Webb] what would happen as far as the insurance. Ms. Webb told me that I was responsible for the previous premiums, from March through then, and I would have to pay them, starting with the current premium. . . . I asked to speak to Mr. Bowden. She told me Mr. Bowden was not in the office, and so therefore, I asked to speak to Ms. Agee, who is the assistant director. . . . I repeated everything to Ms. Agee that I had told Ms. Webb . . . Ms. Webb and Ms. Agee, both, had told me that the agency could not pay those premiums. And I told her that I could not. The only money that I could even think of accessing at the time was that that I had in my retirement. And the only way you can get the retirement is to resign.

Prior to the appellant's resignation, appellee Bowden had indicated to the appellant that he was required by law to collect the appellant's past insurance premiums. In a letter to the appellant, Mr. Bowden suggested he had no other choice than to collect the premiums because it was his "responsibility to administrate the funds that are disbursed in a manner which does not abuse the public trust and/or budget funding." [5] After learning of the appellant's resignation, however, Mr. Bowden stated that he withdrew his demand for reimbursement of past premiums because he decided to "just let it go." As he stated in his deposition, "We just let it go, and I don't know when that was. It was after I got back [and learned of the appellant's resignation], but it was not a big issue. You know, it just wasn't a big issue, and I just let it go."

The appellant protested the Workers' Compensation Division's rejection of her claim. On September 23, 1996, the Workers' Compensation Office of Judges reversed the Division's order, and ruled that the appellant's workers' compensation claim was compensable.

Telecommunicator vacancies arose at RCESA after the appellant's resignation. However, it appears that individuals at RCESA informed the appellant that, to be eligible for those vacancies, the appellant would have to reapply, take RCESA's internal applicant test, and possibly interview again. The appellant, with nearly 6 years of job experience and who had been promoted to the level of "Telecommunicator 5" at the time of her resignation, was also told that she would possibly start at the lowest pay scale, as a "Telecommunicator 1."

On March 10, 1997, the appellant filed the instant action alleging, *inter alia:* (1) that the appellees, RCESA and Mr. Bowden, discriminated against the appellant in violation of *W.Va.Code,* 23–5A–1 [1978] based upon her filing a workers' compensation claim; (2)

that the appellees discriminated against her in violation of *W.Va.Code,* 23–5A–2 [1982] by canceling or decreasing the appellant's medical care insurance coverage due to her filing of a workers' compensation claim; and (3) that the appellees constructively discharged the appellant through their actions, including their violations of *W.Va Code,* 23–5A–1 and –2.[6]

After conducting extensive discovery, the appellees made a motion for summary judgment pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure* [1998]. On June 17, 1998, the trial court issued memorandum opinion granting the appellees' motion and dismissing all of the appellant's claims.

The trial court concluded that both appellees had established that RCESA's unpaid sick leave policy was "neutral," and that the appellees were acting in accordance with that policy when they refused to pay the appellant's medical insurance premiums after the June 13, 1996 denial of her workers' compensation claim. Because the claimant resigned and was no longer employed by RCESA after June 17, 1996, the trial court concluded that the appellees had no duty to resume paying the appellant's insurance premiums when her claim was ruled compensable in September 1996. In essence, the trial court found no evidence that discrimination in violation of *W.Va.Code* 23–5A–1 and –2 had occurred, and no evidence to suggest that the plaintiff had been constructively discharged.

As to appellee Bowden, the trial court additionally found that RCESA was a political subdivision under the Governmental Tort Claims and Insurance Reform Act, *W.Va. Code,* 29–12A–1 to –18 ("the Act"). The trial court concluded that because Mr. Bowden was at all pertinent times acting within the scope of his employment, that Mr. Bowden was entitled to immunity under the Act as an

---

**5.** Matilda Webb, appellee Bowden's administrative assistant, testified similarly in her deposition: It was my understanding from what Mr. Bowden told me that he informed her that, you know, he could be held liable if he used government funds to pay something he couldn't legally pay, so he had explained to her that if it

finally came down that she was denied, that she would need to reimburse the agency.

**6.** *W.Va.Code,* 23–5A–1 [1978] and –2 [1982] are cited and discussed in greater detail in Section IIIA, *infra.*

employee of a political subdivision. *See,* *W.Va.Code,* 29–12A–5(b) [1986].[7]

The appellant filed a motion to reconsider the circuit court's summary judgment order. The motion to reconsider was denied on July 2, 1998.

The appellant now appeals the circuit court's June 17, 1998 summary judgment order and July 2, 1998 order denying her motion to reconsider.

## II.

### *Standard of Review*

As we stated in Syllabus Point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), we review a circuit court's entry of summary judgment under *West Virginia Rules of Civil Procedure* Rule 56 [1998] *de novo.* The traditional standard for granting summary judgment was established in Syllabus Point 3 of *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963) where we held:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord,* Syllabus Point 1, *Fayette County Nat. Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997); Syllabus Point 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995); Syllabus Point 2, *Painter, supra.*

With this standard in mind, we examine the arguments of the appellant.

## III.

### *Discussion*

The appellant contends that the circuit court erred in granting summary judgment to the appellees, and raises three issues on appeal. First, the appellant contends that the circuit court erred in its determination that RCESA and Mr. Bowden did not engage in discrimination in violation of *W.Va.Code,* 23–

5A–1 and –2 by demanding that the appellant reimburse RCESA for medical insurance premiums when her workers' compensation claim was denied, and contends questions of fact exist regarding whether the appellees violated those statutes. Second, the appellant contends that questions of material fact remain to be tried concerning whether the appellees constructively discharged the appellant. Last, the appellant argues that the circuit court erred in finding that Mr. Bowden was immune under *W.Va.Code,* 29–12A–5 [1986].

We examine these arguments in turn.

### A.

### *Summary Judgment on the Alleged Violation of W.Va.Code, 23–5A–1 and 2*

■ The appellant first challenges the circuit court's determination that no discrimination occurred in violation of *W.Va.Code,* 23–5A–1 and –2, and, in effect, its conclusion that RCESA could legally demand reimbursement for medical insurance premiums paid while the appellant was seeking workers' compensation benefits. The appellant also disputes the circuit court's suggestion that even if a violation of those statutes occurred, that the appellees were entitled to summary judgment because no questions of material fact remained for resolution.

■ The appellant contends that RCESA and Mr. Bowden violated two provisions of the Workers' Compensation Act that protect workers' compensation claimants such as the appellant from discrimination by an employer. The first provision, *W.Va.Code,* 23–5A–1 [1978], broadly protects a workers' compensation claimant from discrimination in the workplace, and states that:

No employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter.[8]

___

7. *W.Va.Code,* 29–12A–5(b) is cited and discussed in greater detail in section IIIC, *infra.*

8. We set forth the outline of a discrimination claim under *W.Va.Code,* 23–5A–1 in Syllabus Point 1 of *Powell v. Wyoming Cablevision, Inc.,* 184 W.Va. 700, 403 S.E.2d 717 (1991):

The second statutory provision, *W.Va. Code*, 23–5A–2 [1982], is specifically at issue in this case, and prohibits an employer from discriminating against an employee seeking workers' compensation benefits by altering the employee's medical insurance. That statute states, in pertinent part (with emphasis added):

> Any employer who has provided any type of medical insurance for an employee or his dependents by paying premiums, in whole or in part, on an individual or group policy shall not cancel, *decrease his participation on behalf of the employee or his dependents, or cause coverage provided to be decreased* during the entire period for which that employee during the continuance of the employer-employee relationship *is claiming* or is receiving benefits under this chapter for a temporary disability. . . .

The appellant argues that these two statutes, applied together, prohibited the appellee's threats to collect from the appellant medical insurance premiums paid by the appellee while the appellant was seeking workers' compensation benefits.

The appellees contend that RCESA never decreased RCESA's medical insurance "participation" on behalf of the appellant or her dependents, or caused the level of her medical insurance coverage to be decreased while the appellant was "claiming" benefits. The appellees argue that RCESA continued to pay the appellant's medical insurance premiums through to the day her claim was denied by the Workers' Compensation Division, through to the day she resigned from her job, June 17, 1996, and in fact, paid her premiums through the entire month of June 1996.[9] The appellee takes the position, then, that no discrimination occurred pursuant to *W.Va.Code*, 23–5A–1 and –2.

The appellant argues that *W.Va.Code*, 23–5A–2 prohibits an employer from demanding

reimbursement of medical insurance premiums paid during the pendency of a workers' compensation claim, even when that claim is ultimately denied. The appellant argues that the conditional payment of premiums in this case by the appellees decreased the participation by the appellees and provided less coverage to the appellant than an unconditional payment. In other words, the appellant argues that she received medical insurance coverage on a contingent basis that was dependent upon the successful outcome of her workers' compensation claim, while other employees at RCESA received unconditional coverage. The appellant contends that the appellees violated *W.Va.Code*, 23–5A–2 by threatening to collect medical insurance premiums paid while she was unsuccessfully seeking workers' compensation benefits. We agree with the appellant's argument.

■ When this Court is called upon to construe a statute, our primary goal is to give effect to the intent of the Legislature. Syllabus Point 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). The legislative intent behind the workers' compensation anti-discrimination statutes was discussed in *Rollins v. Mason County Bd. of Educ.*, 200 W.Va. 386, 489 S.E.2d 768 (1997). We stated that, "[a]rticle 5A of Chapter 23 was enacted in 1978 for the express purpose of prohibiting employers from [engaging in] certain discriminatory practices with the core objective of protecting employees from retaliatory conduct in response to the filing of workers' compensation claims." 200 W.Va. at 390, 489 S.E.2d at 772.

■ Through the enactment of *W.Va. Code*, 23–5A–2, the Legislature intended to extend health insurance coverage to employees during that time period between an injury and the receipt of benefits[.] *Rollins*, 200 W.Va. at 392, 489 S.E.2d at 774 (1997).

---

In order to make a prima facie case of discrimination under W.Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va.Code, 23–1–1, *et seq.*; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to

discharge or otherwise discriminate against the employee.

9. RCESA paid the appellant's medical insurance premium for the entire month of June on June 1, 1996. That premium provided insurance to the appellant and her family through June 30, 1996, or 13 days after she resigned.

*W.Va.Code,* 23–5A–2 is intended to protect an employee's right to employer-provided medical insurance coverage for themselves and their dependents while a workers' compensation claim is pending. The statute protects the employee who is "claiming or receiving" temporary total disability benefits.

■ In *Rollins,* we examined whether an employee who had been denied workers' compensation temporary total disability benefits, and who was appealing the Workers' Compensation Division's denial order, fell within the definition of an employee who was "claiming or receiving" benefits. We concluded that *W.Va.Code,* 23–5A–2 was not intended to require an employer to provide medical insurance coverage throughout the duration of the appeal stage of the claims process. We held, at Syllabus Point 6, that:

> A workers' compensation claimant who is protesting the closure of her claim for temporary total disability benefits and/or the denial of additional temporary total disability benefits does not come within the meaning of the terms "is claiming" found in West Virginia Code § 23–5A–2 (1994). Accordingly, an employer who ceases to pay the health insurance premiums for a claimant who is protesting or appealing the closure or denial of temporary total disability benefits does not commit an act of discrimination within the legislative intent of West Virginia Code § 23–5A–2.

In *Rollins,* we specifically defined a type of employee who *does not* fit in the definition of an employee who "is claiming" workers' compensation benefits under *W.Va.Code,* 23–5A–2. In this case, we must determine what type of employee *does* fit within the definition.

The Legislature's choice of the disjunctive "or" between the words "is claiming" and "is receiving" in *W.Va.Code,* 23–5A–2 makes it clear that the statute is intended to protect both employees who file a workers' compensation claim and receive benefits, and those employees who merely file a claim form and are awaiting a ruling on the compensability of their claim from the Workers' Compensation Division. The Legislature intended to protect a claimant's continued right to receive insurance benefits while their claim is

pending, and regardless of the ultimate outcome of their claim. In the absence of this statute, an employee whose claim is contested might be pressured to forego the exercise of his or her right to file a claim for workers' compensation benefits, to avoid the risk of having to pay medical insurance premiums retroactively.

■■ We therefore hold that when an employer provides any type of medical insurance benefits for an employee or his or her dependents, *W.Va.Code,* 23–5A–2 [1982] protects the right of the employee, who "is claiming" workers' compensation benefits, to those employer-provided medical insurance benefits during the period after the employee has filed a claim for workers' compensation benefits, but before the Workers' Compensation Division has ruled on the compensability of the claim, regardless of the ultimate outcome of the claim. This statutory provision prohibits an employer demanding from the employee reimbursement of medical insurance premiums or benefits paid during the pendency of a workers' compensation claim, even if that claim is denied.

■ The circuit court in this case appears to have concluded that the appellees did not violate *W.Va.Code,* 23–5A–1 and –2. In reaching this conclusion, the circuit court seems to have relied upon RCESA's "neutral" internal policy providing for a leave of absence without salary or medical benefits. The circuit court cited to our discussion in *Rollins* where we stated that when a neutral employment policy results in the termination of an employee, "courts have generally held that termination of employment under such a policy does not violate a compensation antidiscrimination statute." 200 W.Va. at 391, 489 S.E.2d at 773 (*citing Powell v. Wyoming Cablevision, Inc.,* 184 W.Va. 700, 705, 403 S.E.2d 717, 722 (1991)). While we continue to stand by our holdings in *Rollins* and *Powell,* we hold that while an employment policy may be facially neutral, it cannot be applied in a manner that nullifies or trumps the protective requirements of *W.Va.Code,* 23–5A–2.

The circuit court therefore erred in its interpretation of *W.Va.Code,* 23–5A–2, and

its intimation that the conduct of the appellees could not constitute a violation of *W.Va. Code*, 23–5A–1 and –2.

The appellant also argues that, in addition to erroneously interpreting *W.Va.Code*, 23–5A–2, the circuit court improperly dismissed her statutory claim on the principle of "no harm, no foul." In other words, the circuit court held that even if the appellees technically violated *W.Va.Code*, 23–5A–2, RCESA nevertheless did not violate the statute because RCESA never followed up on its demands that the appellant reimburse RCESA for the past medical insurance premiums. Furthermore, the circuit court construed the evidence as showing that the appellant resigned her position with RCESA to obtain funds to pay prospective premiums rather than the past premiums. The circuit court therefore found no material facts were in dispute, and granted summary judgment to the appellees on this statutory claim.

The appellant contends the circuit court overstepped its authority by granting summary judgment, because a "circuit court's function at the summary judgment stage is 'not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. at 59, 459 S.E.2d at 336.

We find substantial evidence that Mr. Bowden and RCESA improperly demanded reimbursement of medical insurance premiums paid while the appellant was pursuing her workers' compensation claim, in violation of *W.Va.Code*, 23–5A–2. One letter from Mr. Bowden indicates that, if the appellant was unsuccessful in her workers' compensation claim, the premiums paid by RCESA would later be deducted from her accrued compensatory time/vacation leave and/or future wages. Deposition testimony by the appellant and Matilda Webb, Mr. Bowden's administrative assistant, again indicated that RCESA intended to hold the appellant responsible for premiums paid from March through June 1996. This evidence, taken in the light most favorable to the appellant, indicates that Mr. Bowden and RCESA threatened to improperly recover from the appellant medical insurance premiums that were paid during the pendency of her workers' compensation claim.

Furthermore, after a careful review of the record, we find conflicting evidence as to whether the appellant resigned her employment as a result of the allegedly improper actions of Mr. Bowden and RCESA. The circuit court appears to have concluded that the sole reason for the appellant's resignation was her perceived need to obtain funds to pay future premiums *only*. However, the deposition testimony of the appellant refutes this conclusion, because in her testimony she pointed to the denial of her workers' compensation claim and the subsequent conversation with Mr. Bowden's administrative assistant and the assistant director of RCESA as the reasons compelling her resignation. Both of these individuals appear to have told the appellant that she was required to pay both past *and* future medical insurance premiums—and that the only way to access her retirement fund to pay those past and future premiums was to resign.

We hold that there is substantial evidence in the record that the appellees demanded that the appellant pay the premiums for her medical insurance during the period she was claiming workers' compensation benefits, in violation of *W.Va.Code*, 23–5A–2. Whether this demand triggered the plaintiff's resignation presents a question of material fact for jury resolution. We therefore hold that the circuit court erred in granting summary judgment on the appellant's claim that the appellees discriminated against her in violation of *W.Va.Code*, 23–5A–1 and –2, and reverse the circuit court's orders on this issue.

### B.

*Summary Judgment on the Appellant's Alleged Constructive Discharge*

■ The appellant next argues that Mr. Bowden and RCESA created working conditions that compelled her to resign—including the appellees' violation of *W.Va.Code*, 23–5A–2, as well as other actions by the appellees. As with the first claim, the circuit court granted summary judgment on this claim based upon its interpretation of the evidence, concluding that the appellant resigned only

**420**

because she needed money to pay future premiums that RCESA was not obligated to pay. The appellant contends that the evidence on this issue is substantially in conflict, and that because material questions of fact remain, summary judgment was improper. We agree.

■ We set out the standards for proving a claim of constructive discharge in Syllabus Point 6 of *Slack v. Kanawha County Housing and Redevelopment Auth.*, 188 W.Va. 144, 423 S.E.2d 547 (1992), where we held:

> In order to prove a constructive discharge, a plaintiff must establish that working conditions created by or known to the employer were so intolerable that a reasonable person would be compelled to quit. It is not necessary, however, that a plaintiff prove that the employer's actions were taken with a specific intent to cause the plaintiff to quit.

In light of Syllabus Point 6 of *Slack*, we believe that the record in this case creates a question of fact regarding whether the appellant was constructively discharged.

As indicated previously, it can be inferred from the record that the appellant resigned so that she could withdraw money from her retirement account to reimburse RCESA for past medical insurance premiums, and to pay those premiums prospectively. The appellant faced the prospect of continuing on unpaid leave with no insurance and, after months without pay, returning to her job to face a debt for past insurance premiums—or quitting and paying past and future premiums now. These facts suggest that Mr. Bowden and RCESA created working conditions under which a reasonable person would quit. While the appellees may not have intended to force the appellant to resign, their actions had that effect.

Other circumstances, beyond the medical insurance issue and the evidence of discrimination under *W.Va.Code*, 23-5A-1 and -2, are also relevant to the constructive dis-

charge question. When Mr. Bowden learned that the appellant would be filing a workers' compensation claim, he insisted that she request an "unpaid leave of absence" whereby she would forego employer-paid medical insurance benefits—despite the appellant's protected status as an employee who was off work with a work-related disability. *See, e.g., W.Va.Code,* 23-5A-3 [1990] (prohibiting an employer from discharging an employee who is receiving or eligible to receive temporary disability benefits).

Furthermore, RCESA refused to consider any type of "light duty" for the appellant. There was no apparent reason given for this refusal, particularly in light of the fact that the appellant had previously been placed on "light duty" work for a nonoccupational health problem, and Mr. Bowden's assertion that the appellant's job only required the repetitive use of her hands 20% of the time. Finally, RCESA refused to permit the appellant to fulfill her duties as chairperson of the LEPC, despite her ability to perform those duties, and despite her willingness to perform those duties without compensation.

Taken as a whole, a reasonable jury could conclude that the circumstances the appellant faced on June 17, 1996 were such that a reasonable person would have resigned, thus creating a constructive discharge. We therefore find that the circuit court's order granting summary judgment to the defendants on this issue was in error.

### C.

*Summary Judgment on the Issue of Mr. Bowden's Immunity*

■ The appellant contends that the circuit court erred in finding that appellee Bowden was immune as an employee of a political subdivision under the Governmental Tort Claims and Insurance Reform Act, *W.Va.Code,* 29-12A-1 to -18. The appellant concedes that RCESA is a "political subdivision" under the Act.[10] As to the immunity of

10. *W.Va.Code,* 29-12A-3(c) [1986] defines "political subdivision:"

"Political subdivision" means any county commission, municipality and county board of education; any separate corporation or instru-

mentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government func-

employees of a political subdivision, such as appellee Bowden, we have previously held that:

> West Virginia Code § 29–12A–5(b) provides that employees of political subdivisions are immune from personal tort liability unless "(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code."

Syllabus Point 1, *Beckley v. Crabtree*, 189 W.Va. 94, 428 S.E.2d 317 (1993).[11]

The appellant argues that summary judgment dismissing appellee Bowden on the grounds of immunity was incorrect. While it appears that Mr. Bowden was acting within the scope of his employment and official responsibilities, the appellant argues that questions of fact exist concerning whether Mr. Bowden acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" as set forth in *W.Va.Code*, 29–12A–5(b)(2).

■ In order for the appellant to sustain her claim against Mr. Bowden, she must have produced "some 'concrete evidence from which a reasonable ... [finder of fact] could return a verdict in ... [her] favor' or other 'significant probative evidence tending to support the complaint.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. at 60, 459 S.E.2d at 337 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "'[U]nsupported speculation is not sufficient to defeat a summary judgment motion.'" *Williams*, 194 W.Va. at 61, 459 S.E.2d at 338 (*citing Felty v. Graves–Hum-*

*phreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

After reviewing the record and the arguments of the parties, we find that the appellant has failed to articulate any action that appellee Bowden took towards her maliciously, in bad faith, or in a wanton or reckless manner. While the record suggests that Mr. Bowden acted without the benefit of legal advice and may have violated *W.Va.Code*, 23–5A–1 and –2, we cannot say his actions rose to a level of malice, bad faith, or recklessness sufficient to avoid the immunity conferred upon Mr. Bowden by *W.Va.Code*, 29–12A–5(b).

Accordingly, we find that the circuit court correctly granted summary judgment to appellee Bowden on this issue, and affirm the circuit court's order on this issue alone.

## IV.

### Conclusion

We hold that the circuit court correctly found that appellee Bowden was immune as an employee of a political subdivision, in accord with *W.Va.Code*, 29–12A–5(b). We therefore affirm the circuit court's order on this issue.

We further hold that the circuit court erred in granting summary judgment to the appellees on the issue of whether the appellees discriminated against the appellant in violation of *W.Va.Code*, 23–5A–1 and –2, and whether the appellant was constructively discharged. We therefore reverse the circuit court's orders of June 17, 1998 and July 2,

---

tion and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two, chapter sixteen of this code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

11. *W.Va.Code*, 29–12A–5(b) states, in pertinent part:

> An employee of a political subdivision is immune from liability unless one of the following applies:
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> (3) Liability is expressly imposed upon the employee by a provision of this code.

1998, and remand this case for further proceedings in accord with this opinion.

Affirmed in part, Reversed in part, and Remanded.