517 S.E.2d 290

**David E. SAYRE, Plaintiff below, Appellee,**

v.

**Jack J. ROOP, in his capacity as Executive Director of the West Virginia Regional Jail Authority, and the West Virginia Regional Jail and Correctional Facility Authority, Defendants below, Appellants.**

**No. 25481.**

Supreme Court of Appeals of West Virginia.

Submitted April 14, 1999.

Decided June 17, 1999.

Roger D. Forman, Esq., Forman & Crane, L.C., Charleston, West Virginia, Attorney for Appellee.

Jan L. Fox, Esq., Steptoe & Johnson, Charleston, West Virginia, Attorney for Appellants.

PER CURIAM:

This action is before this Court upon an appeal from a final order of the Circuit Court of Kanawha County, entered on June 3, 1998, granting a new trial to the appellee and plaintiff below, David Sayre ("Sayre"), following a jury verdict for the appellants and

defendants below, Jack Roop and the West Virginia Regional Jail and Correctional Facility Authority ("Jail Authority").

The appellants argue that the trial judge erred by granting a new trial. For reasons explained in this opinion, we affirm the order of the circuit court granting a new trial.

## I.

On April 23, 1985, Sayre became a correctional officer at the Kanawha County Jail. In July of 1993, the appellant Jail Authority became responsible for housing the inmates of the Kanawha County Jail in the newly constructed South Central Regional Jail.

The Kanawha County Corrections Officer Association brought suit against the Jail Authority regarding the employment of correction officers at the new South Central facility.[1] An agreement was reached between the parties, and an agreed order was entered on January 13, 1993, setting forth the process by which employees of the Kanawha County Jail would be employed at the new facility.

The agreement provided that the Jail Authority would "transfer[2] employment of the Kanawha County Association Correctional Officers in good standing as Correctional Officers at the proposed South Central Regional Jail Facility[.]" The term "good standing" was defined as follows:

> It is agreed that hereinafter the term "good standing" shall refer to Kanawha County Correctional Officers who are not under any disciplinary sanction or proba-

tionary period. "Good standing" as used in this agreement includes those Kanawha County Correctional Officers who have complied with all employment requirements of the Kanawha County Jail.

On June 28, 1993, Sayre was injured while trying to restrain an inmate, and Sayre was taken to a hospital for treatment. Sayre received treatment for his work-related injury from Dr. James Midkiff, a chiropractor. Dr. Midkiff determined that Sayre could not return to work for an unspecified period of time. Sayre began to receive temporary total disability workers' compensation benefits.

The Jail Authority notified Sayre by letter dated July 9, 1993, that due to his medical leave of absence, he was no longer considered an officer in "good standing"—and that, in order to be employed at South Central, Sayre would have to report back to duty before July 20, 1993.[3] During a subsequent deposition, Dr. Midkiff opined that Sayre was not fit to return to work on July 20, 1993. Sayre was not released for work until he completed a back strengthening program approximately 18 months later.

Sayre testified during the trial of the instant case that he telephoned two people at the Jail Authority to inform them that he would be unable to return to work by July 20. The Jail Authority introduced evidence to contradict Sayre's testimony concerning the telephone calls. There was no other contact between Sayre and the Jail Authority.

1. *Kanawha County Corrections Officer Association v. Billy Burke and the West Virginia Regional Jail and Correctional Facility Authority,* Circuit Court of Kanawha County, Civil Action No. 92–MISC–417.

2. The agreement defined "transfer" as follows:
   Furthermore, it is hereinafter agreed, that the terms "transferred" and "transfer" used in this agreement shall mean, and are limited to, the employment of Kanawha County Correctional Officers in good standing as the Correctional Officers at the South Central Regional Jail in accordance with the provisions of this agreement.
   The agreement also defined the term "transfer" in regard to employment benefits including retirement, sick leave, and annual leave.

3. The Jail Authority letter of July 9, 1993, stated the following:

   In accordance with the Agreed Order in Civil Action No. 92–MISC–417 (Kanawha County Corrections v. Burke), the Authority was instructed to employ all Kanawha County Correctional Officers who were employed in good standing.
   This letter is to inform you that through your medical leave of absence dated June 28, 1993, we have determined that you are in fact *not* an officer in good standing. In order to be considered for a position with the Authority, you must be released from your doctor's care and report back to duty before July 20, 1993. Therefore, you should contact us as soon as possible so that we may determine your standing. Failure to do so will result in this Authority not offering you a position.

On June 22, 1995, Sayre filed suit against the appellants alleging that the appellants had discriminated against Sayre based on his receipt of workers' compensation benefits. The case was tried before a jury, and the jury returned a verdict for the appellants. Sayre filed a post-trial motion for a new trial. The circuit court concluded that the verdict was against the weight of evidence and granted Sayre's motion for a new trial. The appellants appeal from this order.

## II.

■ Pursuant to Rule 59(a) [1998] of the *West Virginia Rules of Civil Procedure*, a circuit court may grant a new trial "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions of law."[4] *See generally* Vol. 11, Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d §§ 2801–1821 (West Pub.1995).

■ We have held that, "[a]n appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial." Syllabus Point 4, *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968), *overruled on other grounds, Tennant v. Marion Health Care Foundation*, 194 W.Va. 97, 459 S.E.2d 374 (1995).

■ This Court has stated that "we review a circuit court's ruling on a motion for a new trial under an abuse of discretion standard." *Tennant*, 194 W.Va. at 104, 459 S.E.2d at 381. This statement in *Tennant* was based upon Syllabus Point 3 of *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied sub nom., W.R. Grace & Co. v. West Virginia*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995), where we held:

A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure*, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

This Court has stated, addressing the trial judge's authority to award a new trial, that the "trial court has opportunities to observe many things in the course of a trial which the printed record presented to an appellate court does not disclose[.]" *Browning v. Monongahela Transp. Co.*, 126 W.Va. 195, 203, 27 S.E.2d 481, 485 (1943). Justice Cleckley, in his concurring opinion to *In re State Public Bldg. Asbestos Litigation*, stated that, "[b]y broadening the authority of trial courts [to grant new trials] and limiting that of the appellate court [to review the same], we strike a decent note for judicial restraint and judicial economy." 193 W.Va. at 132, 454 S.E.2d at 426.

With these principles in mind, we must now determine if the trial judge abused his discretion when he awarded a new trial.

■ The Workers' Compensation Act, *W.Va.Code*, 23–5A–1 to –3, generally prohibits the termination of an injured employee while off work for a compensable injury.[5]

---

4. *W.Va.R.Civ.P.* Rule 59(a) [1998] provides:

(a) *Grounds.*—A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

5. *W.Va.Code*, 23–5A–3 [1990], specifically addresses the termination of employees who are receiving workers' compensation benefits and provides, in pertinent part:

*W.Va.Code,* 23–5A–1 [1978] provides that "[n]o employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under [the Workers' Compensation Act]." This Court has held: "It is a contravention of public policy and actionable to discharge an employee because he has filed a workmen's compensation claim against his employer." Syllabus Point 2, *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980).

■ To establish a *prima facie* case of workers' compensation discrimination we have held that:

In order to make a prima facie case of discrimination under W.Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va.Code, 23–1–1, *et seq.;* and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

Syllabus Point 1, *Powell v. Wyoming Cablevision, Inc.,* 184 W.Va. 700, 403 S.E.2d 717 (1991).

In this case, the appellants concede that Sayre did sustain an injury and that workers' compensation proceedings were instituted. However, the appellants argue that the filing of the compensation claim was not a significant factor in the treatment of Sayre.

This Court has recognized the difficulty in determining if a nexus between a workers' compensation claim and a termination or other discriminatory act exists. Because of a usual lack of direct evidence in discrimination cases, *Powell* instructs us to look at a variety of factors that include, "[p]roximity in time of

the claim and the firing ... [e]vidence of satisfactory work performance and supervisory evaluations before the accident ... [and] evidence of an actual pattern of harassing conduct for submitting the claim[.]" 184 W.Va. at 704, 403 S.E.2d at 721.

Applying *Powell, supra,* to the case before us, we note that Sayre was injured on June 28, 1993, and his compensation form was filled out and signed on June 29, 1993. The letter from the Jail Authority indicating that Sayre was not an officer in good standing due to his medical leave of absence, was mailed on July 9, 1993.[6] Based on the record before us, Sayre worked from 1985 till June of 1993 in a satisfactory manner. Therefore, based on the plain language used in the letter of July 9, 1993 and Sayre's work history, it would appear that the sole reason that Sayre's employment was not transferred was because of his temporary total disability status under workers' compensation.

During trial of the instant case, Dave Tennant, who had served as the Deputy Chief of Operations for the Jail Authority and who was the author of the letter of July 9, 1993, testified that Sayre had met all of the employment requirements to be transferred to the new facility. Mr. Tennant testified that Sayre was determined not to be an employee in "good standing" solely because Sayre was receiving workers' compensation benefits and not wages from the sheriff's department.

Larry Parsons, current Administrator of the South Central Regional Jail, testified that correctional officers who have minor injuries or ailments are assigned posts in the tower which is considered light duty. These positions, however, were not offered to Sayre.

Justice Cleckley pointed out in his concurrence to *In re State Public Bldg. Asbestos Litigation, supra,* the decision to grant or deny a new trial is "committed to the discretion of the trial court because it 'is in a

(a) It shall be a discriminatory practice within the meaning of section one [§ 23–5A–1] of this article to terminate an injured employee while the injured employee is off work due to a compensable injury within the meaning of article four [23–4–1 *et seq.*] of this chapter and is receiving or is eligible to receive temporary total disability benefits, unless the injured employee has committed a separate dischargeable offense. A separate dischargeable offense shall

mean misconduct by the injured employee wholly unrelated to the injury or the absence from work resulting from the injury. A separate dischargeable offense shall not include absence resulting from the injury or from the inclusion or aggregation of absence due to the injury with any other absence from work.

6. *See supra,* note 3.

position to see and hear the witnesses and is able to view the case from a perspective that an appellate court can never match.'" 193 W.Va. at 132, 454 S.E.2d at 426 (citations omitted) (Cleckley J., concurring).

Based on the evidence that we have summarized, the plaintiff's allegation that he was not transferred because of his workers' compensation status was overwhelming. The trial judge was well within his discretion in concluding that the jury verdict for the appellants was a miscarriage of justice and against the clear weight of evidence.[7]

Affirmed.

---

7. The appellants also argue that the circuit court erred in the order of June 3, 1998, by failing to set forth facts sufficient to permit meaningful appellate review. However, the circuit court stated in its order that it had determined that the "verdict was clearly erroneous based upon the evidence presented, and that a miscarriage of justice was committed when the record is reviewed as a whole." In addition to the order granting the new trial, the judge also sent to both parties a letter dated May 15, 1998 in which the judge further explained his reasons for granting a new trial. In this letter the circuit court judge stated:

In this trial, reasonable minds could differ on the weight which certain evidence was given and the jury has the right and duty to so weigh the evidence and find facts in accordance with their interpretation of the evidence as they see and hear the witnesses and as they review the correspondence and documents in the case. However, much of the witness testimony in this trial was corroborated by document [sic] and reasonable minds could not differ without a clearly erroneous verdict being reached. To reach the verdict herein would, and did, manifest confusion induced by certain "red hearings" [sic] and produced a miscarriage of justice when reviewed as a whole[.] We believe that the order of June 3, 1998 combined with the letter of May 15, 1998 set forth facts sufficient to permit meaningful appellate review.