566 S.E.2d 560

STATE of West Virginia ex rel. the Ogden Newspapers, Inc., a West Virginia Corporation, D.B.A. the Journal Publishing Company, a West Virginia Corporation, Petitioner,

v.

Honorable Christopher C. WILKES, Judge of the Circuit Court of Berkeley County, and Richard W. Shaffer, Respondents.

No. 30248.

Supreme Court of Appeals of West Virginia.

Submitted April 2, 2002.

Decided June 6, 2002.

Concurring Opinion of Justice Starcher July 2, 2002.

Concurring and Dissenting Opinion of Chief Justice Davis June 19, 2002.

Robert M. Steptoe, Jr., Rodney L. Bean, Steptoe & Johnson, Clarksburg, for the Petitioner.

David M. Hammer, Robert J. Schiavoni, Hammer, Ferretti & Schiavoni, Martinsburg, Walt Auvil, Pyles & Auvil, Parkersburg, for the Respondent, Richard W. Shaffer.

PER CURIAM.

The petitioner/defendant below, Ogden Newspapers, Inc., doing business as The Journal Publishing Company (hereinafter "Ogden"), has invoked the original jurisdiction of this Court[1] by seeking a writ of prohibition against respondent, the Honor-

---

1. *See* W.Va. Const. art. VIII, § 3; W.Va.Code §§ 53–1–1 (1923), 53–1–2 (1933) (Repl.Vol. 2000).

able Christopher C. Wilkes, Judge of the Circuit Court of Berkeley County, and respondent/plaintiff below, Richard W. Shaffer (hereinafter "Shaffer"). Ogden is seeking specifically to prohibit the circuit court from enforcing its order entered January 5, 2001, which denied Ogden's motion to disqualify David M. Hammer and Robert J. Schiavoni (hereinafter "Hammer and Schiavoni"), of the law firm Hammer, Ferretti & Schiavoni, and Walt Auvil (hereinafter "Auvil"), of the law firm Pyles & Auvil, from representing Shaffer in his case against Ogden alleging improper employment practices. Ogden argues that the effect of the lower court's order is to allow Hammer and Schiavoni to represent a party with interests adverse to those of Ogden in matters substantially related to work the attorneys had done for Ogden while they were associates at the law firm of Steptoe & Johnson. Ogden claims that the lower court's order violates Rule 1.9 of the Rules of Professional Conduct (hereinafter "Rule 1.9") and disregards this Court's previous holding in *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W.Va. 587, 482 S.E.2d 204 (1996) (hereinafter *"Ogden I "*), which involved an employment discrimination case from which both Hammer and Schiavoni were disqualified. Ogden further argues that if Hammer and Schiavoni are disqualified under the provisions of Rule 1.9, then Auvil's association as co-counsel with Hammer and Schiavoni in the Shaffer case raises the presumption that Auvil received confidential information related to Ogden and as a consequence also should be disqualified according to the provisions of Rule 1.10 of the professional conduct rules. Having determined that mandatory disqualification of counsel pursuant to Rule 1.9 is not warranted in this case, the rule to show cause is discharged and the writ prayed for denied.

### I. Factual Background

The matter underlying this petition for a writ of prohibition is a civil action pending in the Berkeley County Circuit Court which was filed in August 2000 against Ogden by Shaffer as a former employee. Shaffer's complaint alleges that his discharge and Ogden's refusal to transfer or rehire him were motivated by discrimination based on age and Ogden's "perception of plaintiff's disability" in violation of the West Virginia Human Rights Act,[2] and claims additionally that Ogden violated West Virginia's Workers' Compensation Act[3] and common law when it terminated his continued employment because the company feared that he may apply for workers' compensation benefits for the work-related injury of stress-induced hypertension. Hammer, Schiavoni and Auvil were selected by Shaffer to serve as his attorneys in this suit.

The law firm of Steptoe & Johnson is representing Ogden in the Shaffer suit. Steptoe & Johnson has provided legal representation to Ogden for over thirty years, including the periods when Hammer and Schiavoni worked for the firm as associates.[4] Based on this prior association with Steptoe & Johnson, Ogden filed a motion to disqualify Hammer and Schiavoni from the Shaffer suit; the motion also sought to disqualify Auvil on the basis that his affiliation with Hammer and Schiavoni raised a presumption that he was the recipient of confidential information about Ogden. The lower court denied the motion for disqualification by order entered January 5, 2001.

### II. Jurisdiction and Standard of Review

In syllabus point one of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), we summarized the considerations which influence when a rule to show cause should issue in response to a petition for a writ of prohibition as follows:

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and

2. *See* W.Va.Code §§ 5–11–1 to –21.

3. *See* W.Va.Code §§ 23–5A–1 to –4.

4. Schiavoni was employed as an associate at Steptoe & Johnson between June 1986 and July 1992; Hammer was an associate at the firm from June 1988 through July 1992. Both gentlemen left Steptoe & Johnson on August 1, 1992, and formed the firm of Hammer, Ferretti & Schiavoni.

money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Furthermore, in *Ogden I* we recognized the accepted practice of filing a writ of prohibition pursuant to the original jurisdiction of this Court in order to obtain timely judicial review of a lower court's decision regarding a motion for disqualification of an attorney. *Ogden I,* 198 W.Va. at 589, 482 S.E.2d at 206. Consequently, we turn to the examination of the disqualification issue which is properly before us.

### III.  Discussion

Ogden initially argues that the circuit court's order disregards a previous ruling of this Court because the disqualification issue presented in the instant case is the "identical case involving the same parties, the same judge and the same cause of action" which was before this Court in *Ogden I.* As this assertion does not reflect current case law regarding dealing with attorney disqualification under Rule 1.9, we disagree.

 Disqualification of an attorney based on conflict of interest with a former client is governed by Rule 1.9 of the West Virginia Rules of Professional Conduct which states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interest [sic] are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

In syllabus point three of *State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569 (1993), we explained that "[u]nder Rule 1.9(a) of the Rules of Professional Conduct, determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations." *Id.* at 291, 430 S.E.2d at 570. In *State ex rel. DeFrances v. Bedell,* 191 W.Va. 513, 446 S.E.2d 906 (1994), we recognized that such a detailed comparative analysis is necessarily conducted on a case-by-case basis: "The determination of the existence of an attorney-client relationship depends on each cases's specific facts and circumstances." *Id.* at 517, 446 S.E.2d at 910. The conclusion in *Ogden I* was based on the facts then under review, that is, Hammer and Schiavoni were disqualified from representing a specific client (Robin Wilkinson) in her specific "handicap discrimination case" against Ogden and was clearly limited to those specific facts. *See,* 198 W.Va. at 593, 482 S.E.2d at 210. Accordingly, we do not find that the lower court's order in this case denying the disqualification motion represented a disregard of the relevant ruling of this Court in *Ogden I.*

 We now undertake our examination "of the facts, circumstances, and legal issues" specific to the Shaffer case in order to determine if disqualification is required under Rule 1.9, as urged by Ogden, because a substantial relationship between the matters in the two representations exists. *McClanahan,* 189 W.Va. at 291, 430 S.E.2d at 570. Under the provisions of Rule 1.9 and our rulings regarding the same, the burden of establishing that a substantially related matter exists is on the former client. Once it is established that the matters are substantially related, the court will presume that confidential information was divulged during the earlier representation, thereby avoiding disclosure of the very information which is to be protected. *See,* Syl. Pt. 4, *McClanahan,* 189 W.Va. at 291, 430 S.E.2d at 570. We recently added further definition to the substantial relationship test in syllabus point one of *State ex rel. Keenan v. Hatcher,* 210 W.Va.

307, 557 S.E.2d 361 (2001), when we adopted the approach taken in § 132 Restatement (Third) of the Law Governing Lawyers and said that two matters are substantially related under Rule 1.9(a) if "there is a substantial risk that representation of the present client will involve the use of [confidential] information acquired in the course of representing the former client, unless that information has become generally known." The express language of section (b) of Rule 1.9 likewise acknowledges that information which is or becomes commonly known lies outside the parameters of confidential information and may be used against a former client in subsequent actions.

In addition to the petition, briefs [5] and arguments of the parties, we have before us documentary evidence, submitted under seal, of the type of legal work performed by Hammer and Schiavoni for Ogden while associates at Steptoe & Johnson.[6] Our study involves an analysis of these documents with due regard to the lower court's reasons for denying the disqualification motion as set forth in its January 5, 2001, order. In summary, the lower court's decision that a substantial relationship between the two representations did not exist was based on: the dissimilar relationship between the facts in either instance; "dramatic" changes in the relevant law; Ogden's acquiescence to Hammer and Schiavoni's representation of clients adverse to Ogden in other cases grounded in "Human Rights Act and other West Virginia laws"; the ongoing relationship Shaffer has had with Hammer and Schiavoni as legal counsel; and the passage of nine years since Hammer and Schiavoni represented Ogden.[7] We note with particular interest that the common thread running through the reasoning which underpins the decision of the lower court is the change in circumstances which has occurred since Hammer and Schiavoni last represented Ogden in 1992.

Changes occurring during the interval between earlier and later representations is not a matter specifically addressed in Rule 1.9 or its commentary. However, as observed by one authority addressing the passage of time with regard to the substantial relationship question,

[t]reating all former representations equally ... clearly threatens over-inclusive application of the substantial relationship standard because we can be fully confident in some instances that the presumed threat of disclosure of material and confidential information gained in that representation is factually unfounded.... [E]ven if facts are remembered with acute and abundant detail (perhaps because they are contained in surviving documents), the passage of time often will decrease or destroy the relevance of those facts in the latter representation. Intervening hap-

---

5. Ogden's petition reiterates essentially the same list that was detailed in *Ogden I* of the work assignments performed for Ogden by Hammer and Schiavoni while they were associates at Steptoe & Johnson. This list is supported by exhibits which include Steptoe & Johnson time records for Hammer and Schiavoni and an affidavit of Robert M. Steptoe, Jr., managing attorney and counsel primarily responsible for handling the labor and employment matters of Ogden, dated August 28, 1995, relating the nature of the work performed for Ogden by Hammer and Schiavoni at Steptoe & Johnson.

6. According to Ogden's brief, these are the same records which were supplied under seal in *Ogden I*.

7. The pertinent text from the lower court's January 5, 2001, order reads:

2. The Court finds that Messrs. Hammer and Schiavoni's prior representation of defendant is not substantially related factually or legally to the instant case. The facts, as plead in the Complaint, are not substantially related to any prior representation and the law has changed so dramatically from 1991 until now that it too is not substantially related.

3. The Court further notes that defendant has not consistently asserted that attorneys Hammer and Schiavoni should be disqualified from representing clients adverse to defendant and its affiliates with regard to the Human Rights Act and other West Virginia laws. The Court is thus unwilling to deprive Mr. Shaffer of his chosen counsel with whom he had an ongoing relationship over the years under these circumstances.

4. The Court further finds that Rule 1.9(a) of the Rules of Professional Conduct does not require an absolute disqualification. Hammer and Schiavoni have not represented the Defendants in nine (9) years. The Court strongly relies on this nine (9) year passage of time in denying defendant's motion for disqualification.

penings and other facts will slowly erode whatever salience might originally have attached even to the former client's innermost secrets. . . . [O]ld information may continue to be secret and thus subject to a broad duty on the part of the lawyer not to reveal or use it adversely. But if the old information is not realistically relevant to the later representation, its presumed possession should not lead to a finding of substantial relationship sufficient to bar the later representation.

Wolfram, *Former–Client Conflicts,* 10 Geo. J. Legal Ethics 677, 731–32 (1997) (footnotes omitted).

We further note that several courts have considered the passage of time to be a relevant factor in determining whether a substantial relationship exists between representations in the context of disqualification motions. *See, e.g., Schwartz v. Cortelloni,* 177 Ill.2d 166, 226 Ill.Dec. 416, 685 N.E.2d 871 (1997) (law firm's appearance in guardianship case forty years earlier for purpose of selling real estate in which ward had one-sixth interest did not entail disclosure of confidential information about unrelated property that was subject of current partition action); *State ex rel. Wal–Mart Stores, Inc. v. Kortum,* 251 Neb. 805, 559 N.W.2d 496 (1997) (lapse of time between representations is one of several factors a court may consider when determining existence of substantial relationship); *Phillips v. Haidet,* 119 Ohio App.3d 322, 695 N.E.2d 292 (1997) (representation of former client seven years earlier in a personal injury action did not form the basis for disqualification in a subsequent defamation action when the medical and financial records of the former client were not useful to the later action); *Bennett Silvershein Assocs. v. Furman,* 776 F.Supp. 800 (S.D.N.Y.1991) (matter disclosed by prospective client during brief consultation ten years earlier not relevant to later adverse representation because most of the alleged acts in the later case had not occurred at time consultation took place); *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311 (7th Cir.1978) (vaguely related representation occurring ten years earlier did not warrant disqualification). We note with particular interest that, although decided on the basis that a direct attorney-client relationship had not been established, this Court found in *State ex rel. DeFrances v. Bedell,* 191 W.Va. 513, 446 S.E.2d 906 (1994), that a one-hour consultation with a prospective estate planning client which had occurred several years earlier was too "remote, isolated, [and] non-productive" to create a former client conflict. *Id.* at 518, 446 S.E.2d at 911. Our decision in *Ogden I* may well have been influenced by the short period of time which had elapsed between the two representations then under consideration. The underlying suit from which Hammer and Schiavoni were disqualified in *Ogden I* was filed roughly two years after Respondents left Steptoe & Johnson.

■ Based upon the foregoing, we conclude that the passage of time between representations is a relevant factor for a court to consider when determining under Rule 1.9 of the Rules of Professional Conduct whether a substantial relationship exists between an earlier representation of a client and subsequent employment of a lawyer adverse to the interests of a former client. We note, however, that the mere passage of time does not absolve attorneys from being faithful to the mandates of the legal profession regarding the confidential treatment of information learned during the course of all attorney-client relationships, nor does our decision today diminish the reviewing courts responsibility to weigh and balance carefully all relevant factors in order to guard against the risk of disclosure of confidential information when addressing disqualification issues.

■ In the instant case, after considering the factual and legal bases of the pending suit in relation to the evidence presented regarding the former representation, we cannot construct a framework from which it can be said that a substantial relationship exists between the matter for which work was done at least nine years ago for Ogden by Hammer and/or Schiavoni as associates with Steptoe & Johnson and the case now pending before the circuit court. It is clear that neither Hammer nor Schiavoni represented Ogden during the course of their representation in any employment discrimination litiga-

tion. We do not find that the research which Respondents had performed and the related brief consultations they then had with Ogden personnel are realistically relevant to the pending case which was filed at least nine years after the research and any related consultation with Ogden was completed.

Ogden nevertheless urges this Court to adopt a position that would, in essence, make the passage of time irrelevant. In reliance on *Chugach Electric Association v. United States District Court*, 370 F.2d 441 (9th Cir.1966), Ogden asserts that the contact Hammer and Schiavoni had with Ogden personnel about employment issues allowed the attorneys to be exposed to a wide array of business information about specific company policies related to discrimination, lines of control and communication and methods of decision making which Ogden claims is privileged. In *Chugach*, a former general counsel to a corporation was disqualified on the premise that he had gained knowledge of private matters of general corporate affairs which gave him "greater insight and understanding of the significance of subsequent events in an antitrust context and offer[ed] a promising source of discovery." *Id.* at 443. Observing that few courts today generally follow the broad-based, "playbook" rationale for disqualification announced in *Chugach*, one authority reasons that "[p]ressed too far, the playbook rationale can give a former client an unjustifiably broad right to bar his or its former counsel from representing a later opponent; if 'insight' into intangibles is sufficient, it would be a rare case indeed that would not qualify." G.C. Hazard, Jr. & W.W.Hodes, 1 *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 13.7 (3d ed.2000). It also appears that the playbook rationale is not favored under our Rules of Professional Conduct, with the commentary following Rule 1.9 stating: "[T]he fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about the client when later representing another client." *Id.* Even those authorities which recognize the value of a playbook ba-

sis for disqualification limit the circumstances in which it is deemed applicable. *See, e.g.*, 2 *Restatement (Third) Law Governing Lawyers* § 132 cmt. *d(iii)* (2000) (disqualification based on playbook information limited to situations in which the general information "will be directly in issue or of an unusual value in the subsequent matter.").

We do not find that the circumstances of the present case warrant application of the *Chugach* reasoning, despite the contrary implication we may have given in *Ogden I* when we said:

> The nature of the research project, as described in a confidential memorandum, clearly supports the presumption that Mr. Hammer gained some insight into the corporate policies of Ogden and its affiliates—insight that would be substantially relevant to Hammer and Schiavoni's representation of Robin Wilkinson's handicap discrimination case against Ogden.

*Ogden I*, 198 W.Va. at 592–93, 482 S.E.2d at 209–10. As previously discussed, it is not until a substantial relationship is found as a result of a thorough comparison of the two representations at issue that disclosure of confidential information—not insight into corporate policies—is presumed.[8]

Applying the *Ogden I* yardstick, we have meticulously reviewed the sealed file in the current case. We judge the pending case to be only generally similar to the earlier matters on which respondents were consulted by Ogden. We therefore are unable to identify any information in that file that will be directly in issue or of unusual value in the matter now pending in the circuit court. This is so especially in light of the passage of time, the extensive changes in the law over the intervening nine-year period and the uniformly general and even hypothetical nature of the information to which respondents were exposed in the earlier time frame.

In sum, as a result of our detailed and careful study of the materials submitted, we do not find a substantial relationship between the two representations which would trigger

8. Had insight into corporate policies been the basis for disqualification in *Ogden I*, Hammer and Schiavoni would have been disqualified from all of the cases consolidated therein and not just the discrimination suit.

the presumption that relevant confidential information was disclosed and disqualification is therefore warranted. Vague general impressions associates may have gleaned about a client's philosophical outlook, which is the most we can formulate from the situation at hand, is not enough to warrant disqualification. Accordingly, we find that the circuit court properly denied Ogden's motion to disqualify Hammer and Schiavoni, which in turn removed the alleged Rule 1.10 basis for the imputed disqualification of Auvil. Consequently, the petition before us for a writ of prohibition is denied.

We stress that the result we have reached in this case should in no way be read as an erosion of this Court's resolve to shield the attorney-client relationship. We have simply recognized that a court faced with a Rule 1.9 motion must consider all relevant factors on a case-by-case basis in order to decide whether disqualification is warranted and that one such factor may be the amount of time which has passed since the former representation occurred. In some instances, no amount of time will remove the subsequent representation prohibition. A lawyer's formidable ethical responsibility of protecting the attorney-client relationship in a manner which steadfastly guards against improper disclosure, misapplication or misuse of protected information obtained from a former client remains unaltered. The frank and honest discourse which is the hallmark of the attorney-client relationship can be preserved only if lawyers are faithful to selecting cases in a prudent and judicious manner so as to protect the best interests of all clients.

Writ denied.

STARCHER, Justice, concurring.

(Filed July 2, 2002)

I concur with the majority opinion and write separately to emphasize several points.

First, we are reviewing a decision of a lower court that specifically found, after a careful review of the record, that the respondents' prior legal work for the petitioners was not substantially related to the instant case. Although this finding should be entitled to a measure of consideration and defer-

ence, the dissent simply ignores this principle.

Second, the majority opinion properly concludes that the passage of time is a relevant *factor* for a court to consider in passing on a disqualification motion. This means that the fact of the partial disqualification in *Ogden I* is not *per se* controlling. The dissent does not dispute the principle that the passage of time may be a permissible factor, but goes on to ignore this principle as well.

Third, the dissent suggests that there have been no important changes in the law of employment discrimination since the decision in *Ogden I*. I beg to differ. To cite only one example, in *Stone v. St. Joseph's Hospital*, 208 W.Va. 91, 538 S.E.2d 389 (2000), we set forth an independent approach to the determination of who is afforded protection by our state law against handicap discrimination. In the instant case, the evidence (under seal) of the respondents' prior research for the petitioner showed that what the respondents worked on was earlier federal law in this area that is essentially inapplicable or obsolete in West Virginia. The dissent ignores this fact.

Fourth, the majority opinion's discussion ably shows why "playbook" knowledge about a former client is not necessarily disqualifying. The dissent does not dispute this showing, nor the applicable authorities—yet the dissent in fact principally focuses on the "playbook" aspect of the petitioners' arguments. Why? Because there is *no* showing of *any pertinent confidential information* that the respondents gained in their prior association with the petitioners.

Finally, the ink on *Ogden I* is ten years old. That ink is fully dry.

Today's decision is based on new facts, and today we write with new ink, to do justice between these parties in the instant case.

Accordingly, I concur.

DAVIS, Chief Justice, concurring, in part, and dissenting, in part.

(Filed June 19, 2002)

Before the ink had barely dried on our earlier pronouncement that attorneys Robert

J. Schiavoni and David M. Hammer could not represent a client, who formerly had been employed by Ogden Newspapers, Inc. (hereinafter referred to as "Ogden"), in an employment discrimination claim against Ogden,[1] this Court has taken up its blotter, smeared the law, and hastily rewritten this page in West Virginia's jurisprudential history. In the case *sub judice*, Ogden has asked this Court to find, once again, that Mr. Schiavoni and Mr. Hammer are disqualified from representing a former Ogden employee in an employment discrimination lawsuit. We previously concluded, in *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W.Va. 587, 482 S.E.2d 204 (1996) (per curiam) (hereinafter referred to as "*Ogden I*"), that such representation was strictly prohibited as violative of Ogden's confidences it had shared with its former counsel. Although the issue is the same in the instant appeal, the majority of this Court has nevertheless effectively erased its prior decision, and scribbled a new chapter in the law governing the disqualification of an attorney: potential conflicts relating to representation of a former client may be cured by the passage of time. I agree with the Court's conclusion that attorney Walt Auvil should be permitted to continue his representation of Mr. Shaffer and, therefore, concur in that portion of the majority's Opinion.[2] However, I cannot condone the Court's ultimate decision to allow Mr. Schiavoni and Mr. Hammer to continue in such

representation, particularly when there have been no substantial changes in the governing law to support such a dramatic departure from our opposite conclusion in *Ogden I*. From this ruling of the Court, then, I dissent.

### A. The Majority Opinion Utterly Fails to Address the Evidence

The most distressing aspect of the majority opinion is the utter absence of any analysis of the actual evidence in this case. Instead of a factual analysis, the majority opinion sets forth two dispositive conclusions, both of which were unequivocally contradicted by the record. The majority opinion erroneously asserts: "It is clear that neither Hammer nor Schiavoni represented Ogden during the course of their representation in any employment discrimination litigation." This assertion plainly was made without any examination of Ogden's evidence. In fact, the evidence submitted by Ogden easily refutes the majority's conclusory statement.

Additionally, the majority opinion concluded that there had been "extensive changes in the law over the nine-year period" since Mr. Schiavoni and Mr. Hammer represented Ogden. Yet, the majority opinion fails to present any facts or discussion regarding the extensive "changes" in the law. Unfortunately, when reading the majority opinion,

---

1. See *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W.Va. 587, 482 S.E.2d 204 (1996) (per curiam) (hereinafter referred to as "*Ogden I*").

2. Because the majority opinion has failed to provide any separate discussion as to why Mr. Auvil should not be disqualified, I will set forth my reasons for such a conclusion. Ogden has contended that, because Mr. Auvil is associated as co-counsel with Mr. Schiavoni and Mr. Hammer, he should be disqualified. As support for its position, Ogden cited to the decision in *Ackerman v. National Property Analysts, Inc.*, 887 F.Supp. 510 (S.D.N.Y.1993). *Ackerman* involved attorneys who filed a complaint against two defendants based upon information provided by former counsel for both defendants. The court in *Ackerman* found that the attorneys for the plaintiffs were disqualified from the case as a result of the information they obtained from the defendants' former attorney.

In the instant case, Mr. Schiavoni and Mr. Hammer argued that the Court should not dis-

qualify Mr. Auvil. To support their argument, Mr. Schiavoni and Mr. Hammer submitted an affidavit on behalf of Mr. Auvil. The affidavit states that Mr. Auvil never discussed the facts of Mr. Shaffer's case with Mr. Schiavoni and Mr. Hammer nor with anyone else in their law firm. Moreover, the affidavit also indicates that Mr. Auvil never met, spoke to or corresponded with Mr. Shaffer. It is further represented in the affidavit that Mr. Auvil only saw a draft copy of the complaint and has never discussed anything with Mr. Schiavoni and Mr. Hammer regarding their prior representation of Ogden.

Based upon the representations contained in the aforementioned affidavit, I believe the record supports the contention by Mr. Schiavoni and Mr. Hammer that Mr. Auvil has been shielded from any knowledge of Ogden that they obtained during their prior representation thereof. Consequently, I find no basis for the disqualification of Mr. Auvil.

one cannot determine exactly what law is at issue and how that law has changed.

In the final analysis, it is clear that the majority opinion was merely seeking a specific result which can be supported neither by the record nor by the applicable law. Therefore, to achieve the desired outcome, the majority opinion completely avoids any discussion of the evidence or the law. With this irreverent approach to judicial scholarship, I strongly disagree.

### B. The Action Filed by Mr. Schiavoni and Mr. Hammer Against Ogden Is Substantially Related to Their Prior Representation of Ogden

Ogden sought to disqualify Mr. Schiavoni and Mr. Hammer as a result of their representation of Ogden during their prior employment with the law firm of Steptoe and Johnson. According to Ogden, Rule 1.9 of the West Virginia Rules of Professional Conduct[3] prohibits Mr. Schiavoni and Mr. Hammer from acting as counsel for Mr. Shaffer in the underlying suit as they had previously represented Ogden in a substantially related matter. I agree.

This Court has previously held that:

Rule 1.9(a) of the Rules of Professional Conduct, precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interests of the former client unless the former client consents after consultation.

Syl. pt. 2, *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993). In the recent decision of *State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001), we further held that:

Under West Virginia Rule of Professional Responsibility 1.9(a), a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as counsel if (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known.

Syl. pt. 1, *Keenan*, 210 W.Va. 307, 557 S.E.2d 361. The decision in *McClanahan* also noted that "determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations." Syl. pt. 3, in part, *McClanahan*, 189 W.Va. 290, 430 S.E.2d 569.

In the instant case, the majority opinion simply concludes Mr. Schiavoni's and Mr. Hammer's prior representation of Ogden is not substantially related to the case they filed against Ogden. However, the record could not be more clear and supportive of the opposite conclusion. Mr. Schiavoni and Mr. Hammer's prior representation of Ogden is *substantially* related to the case they filed against Ogden on behalf of Mr. Shaffer. To so conclude, one need look no further than the complaint.

The complaint filed by Mr. Schiavoni and Mr. Hammer on behalf of Mr. Shaffer states that termination of Mr. Shaffer's employment with Ogden was in violation of the law:

12. Defendant's decision to discharge, deny transfer, and refusal to rehire plaintiff was motivated by plaintiff's age and/or plaintiff's record and/or defendant's perception of plaintiff's disability in violation of the West Virginia Human Rights Act.

13. Defendant's decision to discharge, deny transfer, and refusal to rehire plaintiff was motivated by fear that plaintiff may seek Workers' Compensation benefits in violation of the Workers' Compensation Act and the common law of West Virginia.

---

**3.** Rule 1.9 of the West Virginia Rules of Professional Conduct provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

In essence, Mr. Shaffer brought an action against Ogden alleging his employment termination was discriminatory and in violation of the West Virginia Human Rights and Workers' Compensation Acts.

Mr. Schiavoni's and Mr. Hammer's ability to initiate a discrimination claim against Ogden was squarely addressed in *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W.Va. 587, 482 S.E.2d 204 (1996) (per curiam) ("*Ogden I*").[4] In *Ogden I*, one of the clients represented by Mr. Schiavoni and Mr. Hammer filed a handicap discrimination claim against Ogden. This Court found that Mr. Schiavoni and Mr. Hammer were disqualified from bringing the handicap discrimination claim because of Mr. Hammer's previous work for Ogden which involved a discrimination issue under the West Virginia Human Rights Act.[5] 198 W.Va. at 592–93, 482 S.E.2d at 209–10.

In the instant proceeding, Ogden has again properly asserted that Mr. Hammer's previous work for Ogden included legal advice involving handicap discrimination under the state's Human Rights Act, as well as discriminatory discharge under the state's Workers' Compensation Act. Ogden also established that Mr. Schiavoni performed work for Ogden that involved age discrimination and workers' compensation discrimination. Consistent with *Ogden I*, it is crystal clear from this evidence that the action filed by Mr. Schiavoni and Mr. Hammer is substantially related to legal matters in which these same attorneys previously had represented Ogden.

Mr. Schiavoni and Mr. Hammer do not dispute that their prior work for Ogden involved the Human Rights Act and the Workers' Compensation Act. However, they contend that "extensive changes" in the law, and the fact that it has been almost ten years since their representation of Ogden, militate in favor of their representation of Mr. Shaffer. The majority opinion blindly accepts

both arguments. Neither argument has merit.

Although Mr. Schiavoni and Mr. Hammer contend that there have been "extensive changes" in the law, they completely fail to identify any such alterations. Moreover, the majority opinion has failed to provide any evidence of the aforementioned law changes which would be applicable to Mr. Shaffer's case. An examination of the pertinent provisions of the West Virginia Human Rights Act and the West Virginia Workers' Compensation Act reveal no substantive changes in the law since this Court's disqualification of Mr. Schiavoni and Mr. Hammer in the 1996 *Ogden I* decision.

**1. Changes in age and handicap discrimination laws under the West Virginia Human Rights Act.** The age and handicap discrimination claims Mr. Schiavoni and Mr. Hammer filed on behalf of Mr. Shaffer are contained in W. Va.Code § 5–11–9 (1998) (Repl.Vol. 1999). Although this statute was amended in 1998, such alterations were only cosmetic. That is, the amendments involved substituting the word "disable" in place of the word "handicap," and employing gender neutral language.[6] Clearly, these are not substantive changes. Because these amendments were merely cosmetic, the majority opinion has completely failed to identify and analyze extensive changes such as would support its illogical reasoning.

Also, I find no handicap or age discrimination cases decided by this Court which so changed the law as to permit Mr. Schiavoni and Mr. Hammer to be deemed to meet the requirements of Rule 1.9(a) of the West Virginia Rules of Professional Conduct. *See Stone v. St. Joseph's Hosp. of Parkersburg*, 208 W.Va. 91, 538 S.E.2d 389 (2000) (handicap discrimination); *Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 537 S.E.2d 632 (2000) (handicap discrimination); *Haynes v. Rhone–Poulenc, Inc.*, 206 W.Va. 18, 521

---

**4.** The decision in *Ogden I* was unanimous. At the time that case was decided, Justice Albright was a member of the Court, and he is the only member of the current Court to have participated in that decision.

**5.** The decision in *Ogden I* permitted Mr. Schiavoni and Mr. Hammer to represent other clients

with claims against Ogden that did not pertain to substantially related work that they earlier had performed for Ogden.

**6.** The 1995 amendment also contained gender neutral terms. *See* W. Va.Code § 5–11–9 (1992) (Repl.Vol. 1994).

434

S.E.2d 331 (1999) (handicap discrimination); *Bailey v. Norfolk & Western Ry. Co.*, 206 W.Va. 654, 527 S.E.2d 516 (1999) (age discrimination); *Tom's Convenient Food Mart, Inc. v. West Virginia Human Rights Comm'n*, 206 W.Va. 611, 527 S.E.2d 155 (1999) (per curiam) (age discrimination); *Smith v. Sears, Roebuck & Co.*, 205 W.Va. 64, 516 S.E.2d 275 (1999) (per curiam) (age discrimination); *Napier v. Stratton*, 204 W.Va. 415, 513 S.E.2d 463 (1998) (per curiam) (handicap discrimination); *Strawderman v. Creative Label Co., Inc.*, 203 W.Va. 428, 508 S.E.2d 365 (1998) (per curiam) (handicap discrimination); *Hosaflook v. Consolidation Coal Co.*, 201 W.Va. 325, 497 S.E.2d 174 (1997) (handicap discrimination); *Vandevender v. Sheetz, Inc.*, 200 W.Va. 591, 490 S.E.2d 678 (1997) (per curiam) (handicap discrimination); *St. Peter v. Ampak–Division of Gatewood Prods., Inc.*, 199 W.Va. 365, 484 S.E.2d 481 (1997) (per curiam) (handicap discrimination); *Barlow v. Hester Indus., Inc.*, 198 W.Va. 118, 479 S.E.2d 628 (1996) (age and sex discrimination); *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996) (handicap discrimination). Despite this extensive authority, the majority opinion completely fails to discuss our prior decisions and their impact on this case. These omissions were calculated. Why? Because our prior decisions do not support the proposition that this state's handicap and age discrimination laws have changed so dramatically as to relieve Mr. Schiavoni and Mr. Hammer of their disqualification status and permit them to represent Mr. Shaffer in his discrimination claims against Ogden.

2. **Changes in discharge discrimination laws under the West Virginia Workers' Compensation Act.** The Workers' Compensation discharge discrimination claim Mr. Schiavoni and Mr. Hammer brought on behalf of Mr. Shaffer is contained in W. Va. Code § 23–5A–1 (1978) (Repl.Vol. 1998), W. Va.Code § 23–5A–2 (1982) (Repl.Vol. 1998), and W. Va.Code § 23–5A–3 (1990) (Repl.Vol. 1998). These statutes have not been amended since their respective enactments. And though the majority opinion utterly fails to discuss these statutes, it nevertheless incredulously asserts that these laws have undergone dramatic changes.

As with my preceding analysis, I once again find no Workers' Compensation discharge discrimination cases decided by this Court since *Ogden I* which have so changed the law as to permit Mr. Schiavoni and Mr. Hammer to be deemed to meet the requirements of Rule 1.9(a) of the West Virginia Rules of Professional Conduct. *See Nestor v. Bruce Hardwood Floors*, 210 W.Va. 692, 558 S.E.2d 691 (2001) (per curiam); *Nestor v. Bruce Hardwood Flooring*, 206 W.Va. 453, 525 S.E.2d 334 (1999) (per curiam); *Wriston v. Raleigh County Emergency Servs. Auth.*, 205 W.Va. 409, 518 S.E.2d 650 (1999); *Sayre v. Roop*, 205 W.Va. 193, 517 S.E.2d 290 (1999) (per curiam); *Napier v. Stratton*, 204 W.Va. 415, 513 S.E.2d 463 (1998) (per curiam); *Vandevender v. Sheetz, Inc.*, 200 W.Va. 591, 490 S.E.2d 678 (1997) (per curiam); *Rollins v. Mason County Bd. of Educ.*, 200 W.Va. 386, 489 S.E.2d 768 (1997); *St. Peter v. Ampak–Division of Gatewood Prods., Inc.*, 199 W.Va. 365, 484 S.E.2d 481 (1997) (per curiam). The majority opinion conspicuously fails to discuss these decisions and their impact on this case. Obviously, this omission was deliberate because our prior decisions do not support the proposition that this state's Workers' Compensation discharge discrimination laws have changed so dramatically as to permit Mr. Schiavoni and Mr. Hammer to continue in their representation of Mr. Shaffer in this regard.

3. **Disqualification based upon the passage of time.** The only seemingly legitimate basis upon which the majority could have concluded that Mr. Schiavoni and Mr. Hammer were not disqualified is the passage of time argument. While the majority opinion has cited to numerous cases addressing the impact of time on the disqualification of an attorney, none of these decisions hold that the mere passage of time, in and of itself, is sufficient to permit an attorney to sue a former client so as to satisfy the requirements of Rule 1.9(a) of the West Virginia Rules of Professional Conduct. The majority opinion has, in fact, held that, in West Virginia, the passage of time alone is conclusive of whether or not an attorney is disqualified from suing a former client based upon substantially related prior legal work for such

former client. I cannot join such an undermining of the integrity of our legal profession as well as such a clear violation of Rule 1.9(a) of the Rules of Professional Conduct.

Finally, Mr. Schiavoni and Mr. Hammer have presented no evidence to show that a change in Ogden's decision-makers has occurred since they terminated such representation. Insofar as all of the other contentions by the majority opinion are baseless, I believe evidence of a change in decision-makers is imperative to render controlling the passage of time argument. Unfortunately, Mr. Schiavoni and Mr. Hammer have been unable to present such evidence. As stated by Ogden during oral argument, the decision-makers who were in direct contact with Mr. Schiavoni and Mr. Hammer during their tenure as Ogden's counsel continue to be employed by Ogden and serve as its decision-makers.

### C. The Majority Opinion Completely Ignores the Doctrine of Stare Decisis

Perhaps the most compelling reason for my dissent from the majority's opinion is its complete and utter disregard of the time-honored judicial tradition of *stare decisis.* Briefly stated, "[s]*tare decisis* is the policy of the court to stand by precedent... [U]nder the doctrine of *stare decisis,* a case is important only for what it decides—for the 'what' not for 'why' and not for 'how.' " *Banker v. Banker,* 196 W.Va. 535, 546 n. 13, 474 S.E.2d 465, 476 n. 13 (1996). *See also Meadows v. Meadows,* 196 W.Va. 56, 64, 468 S.E.2d 309, 317 (1996) ("[T]he doctrine of *stare decisis* counsels that '[v]ery weighty considerations underlie the principle that courts should not lightly overrule past decisions.' " (quoting *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339, 358 (1970))).

According to this principle,

[a] judicial precedent attaches ... a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy.

*Woodrum v. Johnson,* 210 W.Va. 762, 776, 559 S.E.2d 908, 922 (2001) (Albright, J., dissenting) (quoting *Allegheny Gen. Hosp. v. National Labor Relations Bd.,* 608 F.2d 965, 969–70 (3d Cir.1979) (footnote omitted)). At the heart of this rule is the establishment of certainty for future litigation:

The doctrine of stare decisis rests upon the principle that law by which men are governed should be fixed, definite, and known, and that, when the law is declared by court of competent jurisdiction authorized to construe it, such declaration, in absence of palpable mistake or error, is itself evidence of the law until changed by competent authority.

*Booth v. Sims,* 193 W.Va. 323, 350 n. 14, 456 S.E.2d 167, 194 n. 14 (1994) (Miller, Ret. J., dissenting and concurring) (internal quotation and citation omitted). *See also* Syl. pt. 2, *Dailey v. Bechtel Corp.,* 157 W.Va. 1023, 207 S.E.2d 169 (1974) ("An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law.").

When *Ogden I* was decided, the ultimate conclusion reached by the Court was that Rule 1.9 of the Rules of Professional Conduct precluded attorneys Schiavoni and Hammer from representing a former Ogden employee in an employment discrimination action against Ogden. The reasoning for this ruling was simple: during the attorneys' prior representation of Ogden, they were privy to confidential information about its employment practices that potentially could be used to Ogden's detriment in the subsequent discrimination litigation. Pursuant to the doctrine of *stare decisis,* "a specific legal consequence [was attached] to [that] detailed set of facts," *Woodrum,* 210 W.Va. at 776, 559 S.E.2d at 922. That is, because Mr. Schiavo-

**436**

ni and Mr. Hammer formerly served as counsel for Ogden and obtained information about its employment practices, they cannot now represent Ogden's former employees in employment discrimination proceedings against it. Since this prior ruling is supposed to "furnish[ ] the rule for the determination of a subsequent case involving identical or similar material facts," *Woodrum,* 210 W.Va. at 776, 559 S.E.2d at 922, the final result of the instant appeal should be the same given that both cases involve the same facts, the same circumstances, and virtually identical parties asserting virtually identical claims. In its infinite wisdom, though, the majority has concluded that the hourglass, and not the doctrine of *stare decisis,* dictates the outcome of this case. I do not agree with this reasoning or with its result.

### D. The Pen is Mightier Than the Sword

With a few strokes of the pen, the majority of this Court has begun a new and dangerous chapter in the law governing attorneys' professional conduct. As a result of this decision, attorneys and clients alike will lack the certainty they need to ascertain the propriety of contemplated representation and to recognize conflicts that would preclude such a relationship. My greatest hope would be that this unfortunate page in our jurisprudence would vanish like disappearing ink so practitioners could regain some semblance of certainty regarding conduct that is both condoned and condemned by the West Virginia Rules of Professional Conduct. Because the present Opinion blurs this distinction rather than providing such guidance, I dissent.

I am authorized to state that Justice MAYNARD joins me in this concurring and dissenting opinion.